### NELSON v. SOUTHERN RY. CO.

(Circuit Court of Appeals, Sixth Circuit. January 16, 1908.)

No. 1,728.

1. MASTER AND SERVANT—DEATH OF SERVANT—FELLOW SERVANT.
   Where several crews of switchmen were engaged in switching operations. in a railroad yard, the members of the different crews were fellow servants.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 510–514.]

2. SAME—NEGLIGENCE—RULES—QUESTION FOR JURY.
   Where defendant employed several hundred men in a yard containing numerous tracks on which they were continuously engaged in moving trains and cars, and intestate, a switchman, was killed by the impact given to the cars on one side of him by a train backing in from that direction without warning, whether the railroad company was negligent in failing to prescribe rules for the management of its business in the yards, and in failing to require warning of such operations, was for the jury.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1032–1043.]

3. SAME—ASSUMED RISK.
   Where decedent had worked as a switchman in a railroad yard for eight or nine months prior to his being crushed and killed by the impact given to the cars on one side of him by cars of a train backed in on the same track without warning, and knew of the manner of switching in the yard during such period, and the absence of a rule requiring warning to be given of such operations, he assumed the risk.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 596.]

In Error to the Circuit Court of the United States for the Northern Division of the Eastern District of Tennessee.

G. W. Pickle, for plaintiff in error.
W. L. Welcker, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. The plaintiff in this cause sought to recover damages for the causing of the death of her husband by the negligence of the defendant railroad company. The deceased was a

switchman in its employment in its yards at Knoxville, and was at the time engaged in separating the unsound cars in a train on one of the tracks from the sound ones, and, while engaged in uncoupling two of them, was crushed to death by the impact given to the cars on one side of him by cars of a train backing in from that direction without warning. The crews of both trains were fellow servants, and the ground on which the action is based is that the defendant was guilty of negligence, in that it prescribed no rules in regard to the conduct and movements of trains when backing into a track where its employés were engaged in breaking up and sorting out trains which exposed them to danger. The work in which the deceased was engaged was of a kind which is highly dangerous, and we think upon the circumstances which the evidence tended to show the jury might have found that the defendant was negligent in not prescribing rules for the management of its business in such circumstances, which were calculated to guard its employés from the dangers incident thereto. The yard was large, and several hundred men were employed therein in switching cars and trains from one track to another, and in separating them and taking them to their various destinations. The tracks were numerous, and the movement of cars and trains thereon constant. In Railroad Company v. Doty, 133 Fed. 870, 67 C. C. A. 38, we recognized the rule contended for by counsel for the plaintiff, that in such a business the railroad company is bound to prescribe and enforce such rules and regulations as are reasonably necessary for the safety of its employés in carrying it on. In the present case it is easy to see that a rule requiring a warning to be given when cars are driven into a place where men might be engaged in coupling and uncoupling cars might have saved the decedent's life.

But the deceased was a competent man. He had been employed in that yard as a switchman for eight or nine months, and was familiar with the manner in which the business was carried on. It is true that during that time he was at work in that part of the yard known as the "running yard," out of which cars were run into that part where the cars needing repairs were separated, and switched off upon different tracks according to the gravity of the necessity for repairs. But his experience there was in a place where he had equal means of information in regard to the management of trains or cars sent into the next yard as if he had been in the yard into which they were taken. The taking out and the taking in of trains were parts of the same operation. On the morning of the accident he had been directed to take charge of a switching crew in that part of the yard where some cars needing repairs were collected and which were required to be sorted out and separated; and, although a foreman, was doing work belonging to a switchman, a thing shown to be not unusual. The manner of the switching and the movements of cars that day was not different from that which had been pursued during the whole period of his employment in the yard. If this accident had happened directly after his employment began, it might have been said that he had the right to rely upon the presumption that his employer had taken proper precautions for making the business reasonably safe for its em-

ployés. And the same rule would have held good if the sources of danger were beyond his ken, and the employer had permitted them to continue while the servant was in his employment, for the employé does not assume risks which are not apparent and of which he knows nothing. But here the dangers were not obscure. On the contrary, they were perfectly obvious, as open to the deceased as to any one, and had been for a long time. The case is one falling within the exception to the rule above stated. The exception is, as stated by Mr. Justice Day in Choctaw, etc., R. R. Co. v. McDade, 191 U. S. 64, 68, 24 Sup. Ct. 24, 25, 48 L. Ed. 96:

"That when a defect is known to the employé, or is so patent as to be readily observed by him, he cannot continue to use the defective apparatus in the face of knowledge, and without objection, without assuming the hazard incident to such a situation."

This was given as a statement of the law in respect to the assumption of risks arising from physical defects or sources of danger, but the same reasons exist for recognizing the exception to the general rule in cases where the defect which gives rise to the danger is a fault in the manner in which the business is conducted. A case decided by the Circuit Court of Appeals for the Third Circuit is cited in which the facts concerning the negligence of the employer were similar to the case at bar (Union R. R. Co. v. Tate, 151 Fed. 550, 81 C. C. A. 66), and the opinion in that case was delivered by Judge Gray. We have no criticism to make upon the rule of law in regard to the duty of the employer as there laid down. It is not essentially different from that affirmed by this court in the case of Railroad Co. v. Doty, supra. But in the case in the Third Circuit the facts did not present the question of the assumption of the risk by the employé. It is upon that distinction that we are constrained to affirm the judgment of the court below.

Judgment affirmed, with costs.